deposit was believed to have been lost. The parties to the bond all proceeded on the ground that the deposit belonged to Ellen Murphy. The object of the bond was not to protect the bank against the payment of the money, if it should turn out that it never belonged to Ellen Murphy, for no question of that kind was raised, but to save the bank harmless in case it should appear that for any reason Murphy was not entitled to it as executor. The bond was not a general bond of indemnity. This appears from the recitals and conditions, as well as from the circumstances under which it was given, and we think it would be imposing on the sureties a liability not warranted by the facts or by a reasonable construction of the instrument to hold them liable for the payment by the bank, through its own mistake, to Murphy, of another person's money. The sureties did not agree to indemnify the bank against its own error. It may even be doubted also whether the bond is not void on account of the mistake under which the parties to it labored as to the existence of the deposit to which it related. Rice v. Manufacturing Co., 2 Cush. 80; Spurr v. Benedict, 99 Mass. 463; Conant v. Newton, 126 Mass. 105.

Judgment on the verdict.

---

INGALLS et al. v. HOBBS.

(*Supreme Judicial Court of Massachusetts.* Suffolk. May 9, 1892.)

LEASE OF FURNISHED HOUSE—IMPLIED AGREEMENT.

In a lease of a completely furnished house for a single season there is an implied agreement that the house is fit for immediate habitation.

Appeal from superior court, Suffolk county.

Action by Sarah P. Ingalls and others against Warren D. Hobbs to recover rent for a dwelling house. Defendant had judgment on an agreed statement of facts, and plaintiffs appeal. Affirmed.

*Geo. E. Smith,* for appellants. *Choate & Dana,* for appellee.

KNOWLTON, J. This is an action to recover $500 for the use and occupation of a furnished dwelling house at Swampscott during the summer of 1890. It was submitted to the superior court on what is entitled an "agreed statement of evidence," by which it appears that the defendant hired the premises of the plaintiffs for the season, as a furnished house, provided with beds, matresses, matting, curtains, chairs, tables, kitchen utensils, and other articles which were apparently in good condition, and that when the defendant took possession it was found to be more or less infested with bugs, so that the defendant contended that it was unfit for habitation, and for that reason gave it up, and declined to occupy it. The agreed statement concludes as follows: "If, under the above circumstances, said house was not fit for occupation as a furnished house, and, being let as such, there was an implied agreement or warranty that the said house and furniture therein should be fit for use and occupation, judgment is to be for the defendant, with costs. If, however, under said circumstances, said house was fit for occupation as a furnished house, or there was no such implied agreement or warranty, judgment is to be for the plaintiffs in the sum of $500, with interest from the date of the writ, and costs." Judgment was ordered for the defendant, and the plaintiffs appealed to this court.

The agreement of record shows that the facts were to be treated by the superior court as evidence from which inferences of fact might be drawn. The only "matter of law apparent on the record" which can be considered as an appeal in a case of this kind is the question whether the judgment is warranted by the evidence. Pub. St. c. 152, § 10; Rand v. Hanson, 154 Mass. 87, 28 N. E. Rep. 6; Mayhew v. Durfee, 138 Mass. 584; Railroad Co. v. Wilder, 137 Mass. 536; Hecht v. Batcheller, 147 Mass. 335, 17 N. E. Rep. 651; Fitzsimmons v. Carroll, 128 Mass. 401; Charlton v. Donnell, 100 Mass. 229. The facts agreed warrant a finding that the house was unfit for habitation when it was hired, and we are therefore brought directly to the question whether there was an implied agreement on the part of the plaintiff that it was in a proper condition for immediate use as a dwelling house. It is well settled, both in this commonwealth and in England, that one who lets an unfurnished building to be occupied as a dwelling house does not impliedly agree that it is fit for habitation. Dutton v. Gerrish, 9 Cush. 89; Foster v. Peyser, Id. 242; Stevens v. Pierce, 151 Mass. 207, 23 N. E. Rep. 1006; Sutton v. Temple, 12 Mees. & W. 52; Hart v. Windsor, Id. 68. In the absence of fraud or a covenant, the purchaser of real estate, or the hirer of it for a term, however short, takes it as it is, and determines for himself whether it will serve the purpose for which he wants it. He may, and often does, contemplate making extensive repairs upon it to adapt it to his wants. But there are good reasons why a different rule should apply to one who hires a furnished room, or a furnished house, for a few days, or a few weeks or months. Its fitness for immediate use of a particular kind, as indicated by its appointments, is a far more important element entering into the contract than when there is a mere lease of real estate. One who lets for a short term a house provided with all furnishings and appointments for immediate residence may be supposed to contract in reference to a well-understood purpose of the hirer to use it as a habitation. An important part of what the hirer pays for is the opportunity to enjoy it without delay, and without the expense of preparing it for use. It is very difficult, and often impossible, for one to determine on inspection whether the house and its appointments are fit for the use for which they are immediately wanted, and the doctrine *caveat emptor,* which is ordinarily applicable to a lessee of real estate, would often work injustice if applied to cases of this kind. It would be unreasonable to hold, under such circumstances, that the landlord does not impliedly agree that what he is letting is a house suitable for occupation in its condition at the time.

This distinction between furnished and unfurnished houses in reference to the construction of contracts for letting them, when there are no express agreements about their condition, has long been recognized in England, where it is held that there is an implied contract that a furnished house let for a short time is in proper condition for immediate occupation as a dwelling. Smith v. Marrable, 11 Mees. & W. 5; Wilson v. Hatton, 2 Exch. Div. 336; Warehouse Co. v. Carr, 5 C. P. Div. 507; Sutton v. emple, ubi supra; Hart v. Windsor, ubi supra; Bird v. Lord Greville, 1 Cababe & E. 317; Charsley v. Jones, 53 J. P. Q. B. 280. In Dutton v. Gerrish, 9 Cush. 89, Chief Justice SHAW recognizes the doctrine as applicable to furnished houses; and in Edwards v. McLean, 122 N. Y. 302, 25 N. E. Rep. 483; Smith v. Marrable, and Wilson v. Hutton, cited above, are referred to with approval, although held inapplicable to the question then before the court. See Cleves v. Willoughby, 7 Hill, 83; Franklin v. Brown, 118 N. Y. 110, 23 N. E. Rep. 126. We are of opinion that in a lease of a completely furnished dwelling house for a single season at a summer watering place there is an implied agreement that the house is fit for habitation, without greater preparation than one hiring it for a short time might reasonably be expected to make in appropriating it to the use for which it was designed.

Judgment affirmed.

---

TALLON v. TALLON.

*(Supreme Judicial Court of Massachusetts. Suffolk. May 9, 1892.)*

RIGHTS OF LEGATEES — ACTION AGAINST EXECUTOR'S ADMINISTRATRIX.

Under Pub. St. c. 129, § 10, which provides that "the executor of an executor shall not, as such, administer on the estate of the first testator," a legatee cannot maintain an action against the administratrix of the deceased executor of the will under which she claims.

Appeal from superior court, Suffolk county.

Action by Margaret Tallon against Annie J. Tallon, administratrix of the estate of Thomas A. Tallon, deceased, to recover the amount of a legacy of a fractional part of the residue of an estate of which Thomas A. Tallon was executor. Judgment for defendant. Plaintiff appeals. Affirmed.

*Maxwell & Hudson,* for appellant. *T. J. Gargan* and *T. F. McDonough,* for appellee.

FIELD, C. J. The substance of the amended declaration, so far as is material to the question of law raised by the demurrer, is that Joseph P. Tallon died in the year 1864, testate. By his will he gave the income of the residue of his property, which was about $10,900, to his mother, Ellen Tallon, for her life, and on her death the principal to his two brothers, James H. and Thomas A. Tallon, and to his two sisters Ellen and Margaret, in equal shares. Margaret is the plaintiff in the present action, and was entitled, under the will, to one quarter of the property after the death of the mother. The brothers James H. and Thomas A. were named as executors in the will, and were appointed executors by the probate court, and they duly qualified as such on October 19, 1864. The executors invested $5,000 of the property in real estate, taking a deed to themselves as trustees under the will, and $2,000 on a mortgage of real estate, taking a deed to themselves as executors. James H. Tallon died October 4, 1875, leaving a will, which was duly probated, in which he gave the property which was given to him by the will of Joseph P. Tallon to Thomas A. Tallon and Margaret Tallon in equal shares, so that, after the death of James, Margaret's share of the residue of the property of Joseph on the decease of her mother became three eighths. Ellen, the mother, died March 4, 1878, and Thomas, after the death of James and after the death of his mother, continued, until his own death, to act as surviving executor of the will of Joseph. Thomas died in February, 1888. The declaration alleges that, after the death of Ellen Tallon, Thomas, as executor, collected the rents and profits of the real estate, the sum of $500 on the mortgage, and received besides, in money and other property, the sum of $2,887.73, as well as interest on the mortgage, to three eighths of all which the plaintiff was entitled, and that no part of this has been paid over to her, "and no part thereof has been accounted for to the estate of said Joseph P. Tallon, but the same has been absorbed and concealed in the assets of the estate of Thomas A. Tallon, of whose estate the defendant is administratrix." Neither James nor Thomas was ever appointed trustee. This is an attempt by a legatee of a fractional part of the residue of an estate, in process of being administered in the probate court under a will, to recover in a suit at law of the administrator of the estate of the deceased executor of the will the amount of the legacy, without first having had any account taken in the probate court. No suit on the bond of the executor under the authority of the probate court has been brought. The contention is that the action can be maintained under Pub. St. c. 136, § 19; Cowdin v. Perry, 11 Pick. 503. It is clear that an action for a specific legacy or for a definite pecuniary legacy will lie against an executor or an administrator with the will annexed, but it may be doubted whether a legacy of a part of a residuum can be recovered in this way before the amount of the residuum has been ascertained, either in the probate court or by an action on the bond. The reasons why an action cannot be maintained against an administrator for a distributive share of an intestate estate before a decree of distribution may be an argument to show that an action cannot be maintained till the amount of the residuum has been ascertained. See Conant v. Stratton, 107 Mass. 483. If the plaintiff can maintain an action for her fractional part, the other legatees can also each maintain a similar action, and the amount of the residue must be separately ascertained in each suit and may be different in the different suits. Whether, however, such an action