LENK, J. (concurring).

The court's understanding of the relevant paragraphs in our emergency orders is sensible, as is its explication of those paragraphs, and I agree with the court. Nonetheless, we should acknowledge with some humility that our orders were not as clear as they might have been, insofar as they did not explicitly reference pretrial detention under G. L. c. 276, §§ 58A and 58B. The court's analysis masterfully connects the dots between our emergency orders continuing certain trials, excluding the time periods of such continuances from speedy trial computations under Mass. R. Crim. P. 36, 378 Mass. 909 (1979), and excluding periods of delay resulting from such continuances from the computation of statutory time limits on pretrial detention. I had not previously considered this aspect of our orders, and I fully appreciate why three thoughtful trial court judicial colleagues concluded as they did. The court's clarification is welcome and necessary because, at least in my view, the result is not self-evident.



485 Mass. 54

**Robert GOREHAM**

v.

**Jose C. MARTINS & others.**[1]

**SJC-12761**

Supreme Judicial Court of Massachusetts, Essex.

Argued December 6, 2019

Decided June 22, 2020

**Background:** Residential tenant brought negligence action against landlord arising out of slip and fall on driveway. After jury trial, the Housing Court Department, Essex County, David D. Kerman, J., 2018 WL 1611225, entered finding of no liability. Tenant appealed.

**Holdings:** After transfer of appeal, the Supreme Judicial Court, Gants, C.J., held that:

(1) personal injury damages for a landlord's unreasonable failure to clear snow and ice from a common area may be recovered under common law in a tort action based on negligence but not in a contract action based on the implied warranty of habitability;

(2) even assuming that accumulation of ice on driveway violated sanitary code requirement for maintenance of safe, operable means of egress, such accumulation was not a breach of implied warranty of habitability;

(3) comparative negligence is inapplicable to claims brought under the statutory covenant of quiet enjoyment; and

(4) accumulation of ice on driveway did not seriously interfere with tenancy and thus was not violation of tenant's statutory right to quiet enjoyment of premises.

Affirmed.

**1. Landlord and Tenant** ⚖1052

Implied in every residential lease is a warranty that the leased premises are fit for human occupation and that they will remain so throughout the tenancy.

**2. Landlord and Tenant** ⚖1054(1)

Pursuant to implied warranty of habitability, where a defective condition on leased premises results in injury to the tenant or to a tenant's guest, the injured

---

1.  Rose S. Martins; and Martins Construction Company, Inc.

party may recover personal injury damages through both a tort claim based on the landlord's negligence and a contract claim based on the landlord's breach of the implied warranty of habitability.

**3. Landlord and Tenant ⚖1054(5), 1367**

Personal injury damages for a landlord's unreasonable failure to clear snow and ice from a common area may be recovered under common law in a tort action based on negligence but not in a contract action based on the implied warranty of habitability.

**4. Landlord and Tenant ⚖1317**

A landlord may be liable in negligence for failing to act reasonably in snow and ice removal, even if the accumulation of snow or ice was natural.

**5. Landlord and Tenant ⚖1052**

The warranty of habitability is an implicit provision in every residential rental contract and does not incorporate a fault element.

**6. Landlord and Tenant ⚖1052**

The warranty of habitability implied in every residential rental contract is not intended to punish landlords for misbehavior but rather to ensure that tenants receive what they are paying for, that is, a habitable place to live.

**7. Negligence ⚖200**

Negligence, not strict liability, is the standard of liability generally applied in personal injury cases.

**8. Health ⚖392**
   **Landlord and Tenant ⚖1052**

Habitability, as required pursuant to residential rental contract's implied warranty of habitability, is measured by minimum community standards, which are generally, though not exclusively, reflected in the sanitary and building codes.

**9. Health ⚖392**
   **Landlord and Tenant ⚖1052**

Although violations of sanitary and building codes may provide compelling evidence that a leased dwelling is not habitable, they do not establish per se breaches of the warranty of habitability; emphasis is on whether the premises are fit for human habitation, not merely on whether the landlord committed a code violation.

**10. Health ⚖392**
   **Landlord and Tenant ⚖1052**

For a sanitary or building code violation to establish breach of warranty of habitability for a residential rental property, the violation must relate to the provision, maintenance, and repair of the physical facilities of the property.

**11. Landlord and Tenant ⚖1052**

The scope of the warranty of habitability, as implied into residential rental contracts, includes only the physical maintenance and repair of a dwelling unit.

**12. Health ⚖392**
   **Landlord and Tenant ⚖1052**

Warranty of habitability for leased residential property applies only to substantial code violations or significant defects.

**13. Landlord and Tenant ⚖1052**

Even assuming that accumulation of ice on driveway of leased residential premises violated sanitary code requirement for maintenance of safe, operable means of egress, such accumulation was not a breach of implied warranty of habitability; accumulation of ice on driveway did not render tenant's apartment uninhabitable. 105 Mass. Code Regs. 410.452.

**14. Landlord and Tenant ⚖1074**

Statutory right of quiet enjoyment protects a tenant from serious interference

with the tenancy, meaning any acts or omissions that impair the character and value of the leasehold. Mass. Gen. Laws Ann. ch. 186, § 14.

**15. Landlord and Tenant ⚖1076**

A finding of violation of tenant's statutory right of quiet enjoyment does not require that the landlord have acted intentionally to interfere with such right. Mass. Gen. Laws Ann. ch. 186, § 14.

**16. Landlord and Tenant ⚖1076**

In analyzing whether there is a breach of the covenant of quiet enjoyment of leased residential premises, court examines the landlord's conduct and not his intentions. Mass. Gen. Laws Ann. ch. 186, § 14.

**17. Landlord and Tenant ⚖1076**

Liability under the covenant of quiet enjoyment of leased residential premises requires only a showing of at least negligent conduct by a landlord. Mass. Gen. Laws Ann. ch. 186, § 14.

**18. Landlord and Tenant ⚖1076**

Key inquiry in determining whether landlord breached tenant's right of quiet enjoyment of leased residential premises is whether the serious interference with the tenancy is a natural and probable consequence of what the landlord did, what he failed to do, or what he permitted to be done. Mass. Gen. Laws Ann. ch. 186, § 14.

**19. Landlord and Tenant ⚖1076, 1077(4)**

A landlord is liable for actual and consequential damages for breach of tenant's right to quiet enjoyment of leased residential premises where the landlord (1) had notice of or reason to know of the condition interfering with the tenant's quiet enjoyment of the premises, and (2) acted at least negligently in failing to take appropriate corrective measures. Mass. Gen. Laws Ann. ch. 186, § 14.

**20. Landlord and Tenant ⚖1073**

A landlord who interferes with a tenant's right to quiet enjoyment is subject to both civil and criminal liability. Mass. Gen. Laws Ann. ch. 186, § 14.

**21. Criminal Law ⚖338(4)**

Under a criminal statute, an injured victim's conduct is relevant only if it justifies or mitigates the defendant's conduct, such as where a victim's conduct justifies a defendant's act in self-defense.

**22. Landlord and Tenant ⚖1074**

Comparative negligence is inapplicable to claims brought under the statutory covenant of quiet enjoyment. Mass. Gen. Laws Ann. ch. 186, § 14.

**23. Landlord and Tenant ⚖1076**

The landlord's negligence is only one of the necessary prerequisites to a finding of liability for violation of statutory right to quiet enjoyment of leased residential premises; to succeed on his claim, the tenant must also demonstrate that the landlord's negligence caused serious interference with his tenancy by acts or omissions that impaired the character and value of the leased premises. Mass. Gen. Laws Ann. ch. 186, § 14.

**24. Landlord and Tenant ⚖1076**

Accumulation of ice on driveway of leased residential premises did not seriously interfere with tenancy and thus was not violation of tenant's statutory right to quiet enjoyment of premises; tenant did not lose driveway's use as parking area because he was not entitled to park a vehicle in driveway under lease, and premises had a main entrance that led after a few steps to sidewalk, which tenant could use as alternative means of egress. Mass. Gen. Laws Ann. ch. 186, § 14.

Snow and Ice. Negligence, Snow and ice, Comparative. Landlord and Tenant, Snow and ice, Habitability, Quiet enjoyment. Damages, Breach of implied warranty of habitability, Breach of covenant of quiet enjoyment.

CIVIL ACTION commenced in the Northeast Division of the Housing Court Department on December 9, 2011.

The case was tried before David D. Kerman, J., and posttrial motions were considered by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

Louis J. Muggeo (Jared J. Muggeo also present), Salem, for the plaintiff.

Peter C. Kober, Boston, for the defendants.

Christine A. Knipper & Timothy P. Whooley, Boston, for Massachusetts Defense Lawyers Association, amicus curiae, submitted a brief.

Martin J. Rooney, Braintree, for Boston Housing Authority, amicus curiae, submitted a brief.

Present: Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, & Kafker, JJ.

GANTS, C.J.

|₅₅The plaintiff, Robert Goreham (tenant), was the second-floor tenant of a three-family home in Salem (premises) owned by the defendants Rose and Jose Martins (landlords).[2] In the winter of 2010, the tenant slipped and fell on ice in the driveway adjacent to the premises, severely injuring himself. He brought an action in the Northeast Division of the Housing Court Department against the landlords and Martins Construction Company, Inc.[3] (snow plowing contractor) (collectively, defendants), the contractor retained to remove snow and ice from the driveway. A jury found the landlords negligent for failing to exercise reasonable care in keeping the driveway free of ice. However, they also found that the tenant was comparatively negligent and that he was more responsible for the injury than the landlords, resulting in a finding of no liability on the negligence claim.

The tenant also brought claims against the landlords alleging breach of the common-law implied warranty of habitability and violation of the statutory covenant of quiet enjoyment, G. L. c. 186, § 14. Based on the jury's finding, the judge found the landlords not liable on these additional claims. On appeal, the tenant contends that, because the jury found the landlords negligent, the judge was required as a matter of law to find that the landlords committed a breach of the implied warranty of habitability and violated the statutory covenant of quiet enjoyment and that he should therefore recover personal injury damages notwithstanding the jury's finding that he was comparatively negligent.

We conclude that a tenant may not be awarded personal injury damages on a claim for breach of the implied warranty of habitability arising from a landlord's failure to keep common areas reasonably free of snow and ice. We also conclude that, based on the facts of this case, the tenant may not recover personal injury |₅₆damages under the statutory covenant of quiet enjoyment.[4]

Factual and procedural background. We recite the facts as the jury could have

---

**2.** Jose Martins died prior to trial.

**3.** Martins Construction Company, Inc., is owned and operated by the landlords' son.

**4.** We acknowledge the amicus briefs submitted by the Boston Housing Authority and the Massachusetts Defense Lawyers Association.

found them, reserving certain details for later discussion.

The tenant had resided at the premises as a tenant at will since March 1, 2004. The premises had two entrances: a main entrance located on the side of the building and a fire escape located at the rear. The main entrance led out to a few steps, which ended at a sidewalk, and the rear fire escape led out onto the driveway. The tenant testified that he used only the rear fire escape because it was "easier" to enter and exit his apartment that way.

The tenant also testified that, prior to his accident, the winter had been "very snowy" and "a lot worse than most other winters." In fact, it had snowed between nine and eleven inches in the week prior to the tenant's fall. The tenant also said that the snow plowing contractor had done a "great job" of plowing the driveway in previous years but that during that winter "it was just terrible"; he did not, however, complain to the landlords about what he considered to be the dangerous condition of the driveway.

On January 25, 2010, the tenant decided to run some errands after returning from work. He left the building from the rear fire escape and began to walk down the driveway in his sneakers, traversing "diagonally" to avoid the iciest spots. Although he believed that he could safely navigate the driveway, he slipped approximately five feet away from the steps leading to the main entrance. A neighbor who lived across the street saw the tenant lying on the driveway and went to assist him, almost falling herself in the process. Emergency personnel transported the tenant to the hospital, where he was diagnosed with a dislocated ankle and a fractured fibula. As a result of those injuries, he required multiple surgeries over the next few years and continues to experience pain in his ankle.

In December 2011, the tenant brought an action in the Housing Court against the landlords and the snow plowing contractor. The complaint alleged that the landlords were negligent with respect to the removal of snow and ice on the driveway, that they committed a breach of the common-law implied warranty of habitability, and that they violated the statutory covenant of quiet $|_{57}$enjoyment.[5] The complaint also alleged negligence against the snow plowing contractor.

After a hearing on several motions in limine, the judge decided to submit only the tenant's negligence claims to the jury because the judge believed that the tenant could not prevail on his claims against the landlords for breach of the warranty of habitability and violation of the covenant of quiet enjoyment claims unless the landlords were negligent; the judge reserved disposition of those claims for himself after trial. At trial, the judge also explained that, although there were no Massachusetts appellate decisions on the issue, he believed that damages awarded under both the warranty of habitability and covenant of quiet enjoyment claims were subject to apportionment based on the tenant's own negligence.

The jury, in a special verdict, found that the landlords were negligent, the snow plowing contractor was not negligent, the tenant was comparatively negligent, the tenant's injuries were fifty-three per cent attributable to the tenant's negligence and forty-seven per cent attributable to the landlords' negligence, and the tenant suffered damages in the amount of $25,000.

---

**5.** Prior to trial, the Housing Court judge dismissed additional claims for violation of G. L. c. 93A and for strict liability under the building code, G. L. c. 143, § 51. The dismissal of those claims is not challenged on appeal.

**GOREHAM v. MARTINS** Mass. **483**
Cite as 147 N.E.3d 478 (Mass. 2020)

Because more than fifty per cent of the tenant's injuries were attributable to the tenant's own negligence, the judge concluded that the landlords were not liable for negligence, breach of the warranty of habitability, or violation of the covenant of quiet enjoyment. On the warranty of habitability claim, he determined that the tenant's negligence amounted to "unreasonable misuse" of the rear fire escape -- a doctrine that he borrowed from our products liability jurisprudence, citing Scott v. Garfield, 454 Mass. 790, 795 n.7, 912 N.E.2d 1000 (2009). On the covenant of quiet enjoyment claim, he concluded that comparative negligence applied and that the tenant therefore could not recover damages because his negligence was greater than that of the defendants. Judgment entered for the defendants on all of the claims.

On November 29, 2017, the tenant filed motions for a new trial, for additur, for judgment in his favor on the warranty of habitability and covenant of quiet enjoyment claims, and for an award of attorney's fees on the covenant of quiet enjoyment claim. He contended that unreasonable misuse and comparative negligence were not applicable defenses to the warranty of habitability and ₅₈covenant of quiet enjoyment claims, respectively, and that a finding of any negligence by the landlords meant that judgment should enter for him on both claims as a matter of law. The judge denied the motions, and the tenant appealed from their denial.[6] We transferred the appeal to this court on our own motion.

Discussion. Before we consider the tenant's claims for personal injury damages under the implied warranty of habitability and covenant of quiet enjoyment, we look first to the evolution of our common law regarding negligence liability for slip and falls on snow and ice.

1. Landlord liability in snow and ice cases. Under the traditional common-law rules that governed premises liability in the Nineteenth Century and approximately the first two-thirds of the Twentieth Century, the standard of liability of a property owner for injuries that occurred on the premises depended on the status of the plaintiff, that is, whether the plaintiff was a tenant, an invitee, a licensee, or a trespasser. Papadopoulos v. Target Corp., 457 Mass. 368, 370-371, 930 N.E.2d 142 (2010), citing Young v. Garwacki, 380 Mass. 162, 164, 402 N.E.2d 1045 (1980). "If the plaintiff was a tenant, the landlord had no duty to the plaintiff to maintain any area under the tenant's control in a safe condition: the lease was treated as a transfer of property, and the landlord was only potentially liable for failing to warn the tenant of hidden defects that the landlord was aware of at the time of the lease" or for wantonly or negligently placing a dangerous obstruction in a common area. Papadopoulos, supra at 371, 930 N.E.2d 142. See Watkins v. Goodall, 138 Mass. 533, 536 (1885). Snow and ice were regarded as potentially dangerous obstructions, but a landlord was not liable for injuries sustained by a tenant from a slip and fall in a common area on a "natural accumulation" of snow and ice. Papadopoulos, supra at 372, 930 N.E.2d 142. Rather, "[w]here the obstruction was snow or ice on stairs or a walkway, a landlord could be held liable to the tenant only if he placed the snow or ice there, or was otherwise responsible for it being there." Id. at 373, 930 N.E.2d 142.

---

**6.** The tenant appeals only from the judge's ruling and order on the posttrial motions, not from the jury's verdict.

In contrast, "[i]f the plaintiff was an invitee, defined as a person invited onto the property by the property owner for the property owner's benefit, . . . the property owner owed a duty to use reasonable care to keep the premises 'in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of ⌊59avoiding the risk.' " Id. at 371-372, 930 N.E.2d 142, quoting Mounsey v. Ellard, 363 Mass. 693, 708, 297 N.E.2d 43 (1973). This duty required a property owner to make reasonable efforts to protect invitees from dangerous conditions, including those arising from snow and ice. Papadopoulos, 457 Mass. at 375, 930 N.E.2d 142.

"In 1977, in King v. G & M Realty Corp., 373 Mass. 658, 661, 370 N.E.2d 413 (1977) . . . , the court abandoned the common-law distinction between a property owner's duty of care with respect to a tenant and an invitee, and imposed on a landlord a general duty to keep the common areas of a leased premises in a reasonably safe condition." Papadopoulos, 457 Mass. at 375-376, 930 N.E.2d 142. Yet rather than extend this reasonable care standard to all hazards, including snow and ice, the court later announced a rule that landlords were not liable for slip and fall injuries that occurred due to the "natural accumulation" of snow and ice, no matter whether the injured person was a tenant or invitee. Id. at 376, 930 N.E.2d 142, quoting Aylward v. McCloskey, 412 Mass. 77, 79, 587 N.E.2d 228 (1992). Only where property owners allowed "unnatural and dangerous condition[s] of snow and ice" to arise could they be held liable. Sullivan v. Brookline, 416 Mass. 825, 829-830, 626 N.E.2d 870 (1994).

In Papadopoulos, 457 Mass. at 369, 930 N.E.2d 142, we abolished this "distinction between natural and unnatural accumulations of snow and ice," and applied to the removal of snow and ice the same reasonable care standard that applies to all other hazards. As a result, a tenant or invitee who slips and falls on snow or ice in a common area of the premises may now bring a negligence claim and recover damages from a landlord who failed to exercise reasonable care in removing the snow and ice, regardless of whether it was "natural" or "unnatural," unless the plaintiff is comparatively negligent and is more than fifty per cent responsible for his or her own injuries. Id. See G. L. c. 231, § 85.

The tenant here argues that a plaintiff who is precluded from recovering in negligence for a slip and fall on ice due to comparative negligence may still recover damages for his or her injuries under a contract claim for breach of the common-law implied warranty of habitability because the comparative negligence standard does not apply to such claims. Implicit in this argument is the premise that a tenant may recover for personal injuries from slip and falls on snow and ice in common areas under the implied warranty of habitability. We now examine that premise.

**[1]** 2. *Implied warranty of habitability.* Implied in every residential lease is a warranty that the leased premises are fit for human ⌊60occupation and that they will remain so throughout the tenancy. See Boston Hous. Auth. v. Hemingway, 363 Mass. 184, 199, 293 N.E.2d 831 (1973) (Hemingway). To understand the scope of this implied warranty and to determine whether it extends to snow or ice on a common area of leased premises, we begin by examining its history and evolution.

This court first adopted the warranty of habitability in 1892 in the context of short-term residential rentals. See Ingalls v. Hobbs, 156 Mass. 348, 350, 31 N.E. 286 (1892). The court reasoned that, where a landlord rented a tenant a furnished house

for a summer, the landlord impliedly agreed to deliver a house fit for human habitation, not one "infested with bugs." Id. at 349, 31 N.E. 286. Because the rented premises were uninhabitable, the court held that the tenant could lawfully withhold or abate rent. Id. See also Hemingway, 363 Mass. at 203, 293 N.E.2d 831 ("the landlord's breach of its implied warranty of habitability constitutes a total or partial defence to the landlord's claim for rent being withheld").

In the 1940s, we expanded the scope of the warranty to include a short-term tenant's personal injuries resulting from a landlord's breach. See Hacker v. Nitschke, 310 Mass. 754, 757, 39 N.E.2d 644 (1942). In that case, a tenant leased a furnished cottage for one month and was injured when a defective ladder leading to a bunk bed collapsed. Id. at 755, 39 N.E.2d 644. As discussed supra, as the common law existed at that time, the tenant did not have a claim in tort because landlords were not liable for defects on the premises unless those defects were hidden, the landlord knew about them, and the landlord failed to warn the tenant. Id. at 756, 39 N.E.2d 644. Recognizing that public policy required that premises offered for short-term lease be safe and fit for human habitation, the court held that the tenant properly alleged an action for breach of contract based on the implied warranty of habitability, and that the jury could award damages where they found that the tenant had suffered injury as a result of that breach. Id. at 757, 39 N.E.2d 644. See also Horton v. Marston, 352 Mass. 322, 325-326, 225 N.E.2d 311 (1967) (tenant with nine-month lease could recover for personal injuries under breach of contract theory where defective oven exploded after tenant lit stovetop burner with match).

We expanded the applicability of the implied warranty of habitability to all residential leases regardless of their length in Hemingway, 363 Mass. at 199, 293 N.E.2d 831. The plaintiffs were long-term tenants of the Boston Housing Authority who withheld rent pursuant to G. L. c. 239, § 8A, on the ground that their apartments |₆were in an uninhabitable condition in violation of the sanitary code. Id. at 186, 293 N.E.2d 831. However, § 8A permitted tenants to withhold rent under these circumstances only if they provided proper notice to the landlords, which these tenants had failed to do. Id. at 186-187, 293 N.E.2d 831. Consequently, the Boston Housing Authority sued the tenants for nonpayment of rent, and judgment entered against them. Id. at 187, 293 N.E.2d 831. Concerned about the harsh effect of the tenants' failure to provide proper notice, we held that the implied warranty of habitability established as an exception in Ingalls, 156 Mass. at 350, 31 N.E. 286, "must now become the rule in an urban industrial society where the essential objective of the leasing transaction is to provide a dwelling suitable for habitation." Hemingway, supra at 196-197, 293 N.E.2d 831. Damages would accrue from the time the landlord knew or received notice of the defective condition, whichever occurred first, and would be calculated as the difference between the rental value of the premises had it been habitable ("the rent agreed on may be evidence of this value") and the rental value of the premises in its defective condition. Id. at 203, 293 N.E.2d 831. See McKenna v. Begin, 3 Mass. App. Ct. 168, 172, 325 N.E.2d 587 (1975).

Although this court in Hemingway explicitly did not consider whether the warranty of habitability would apply to personal injury claims by long-term tenants against landlords, see Hemingway, 363 Mass. at 200 n.13, 293 N.E.2d 831, we reached that issue six years later in Crowell v. McCaffrey, 377 Mass. 443, 444, 451, 386 N.E.2d 1256 (1979), where a tenant

was injured when a railing on the third-floor porch gave way. Relying on the short-term lease decisions in Hacker, 310 Mass. at 757, 39 N.E.2d 644, and Horton, 352 Mass. at 325, 225 N.E.2d 311, the court held that the extension of the implied warranty of habitability to long-term residential leases in Hemingway, supra at 196-197, 293 N.E.2d 831, "logically carrie[d] with it liability for personal injuries caused by a breach." Crowell, supra at 451, 386 N.E.2d 1256. However, when Crowell was decided, in contrast with Hacker and Horton, a tenant could prevail on a negligence claim against the landlord who failed to "exercise reasonable care in keeping safe the common areas of an apartment building or similar structure for use by his tenants and their visitors." Crowell, supra at 447, 386 N.E.2d 1256, citing King, 373 Mass. at 660-662, 370 N.E.2d 413. In fact, the court held in Crowell, supra at 449, 386 N.E.2d 1256, that the evidence was sufficient to support a finding of liability on the tenant's negligence claim.

[2, 3] The consequence of the evolution in our common law of the implied warranty of habitability is that, where a defective condition on leased premises results in injury to the tenant or to a tenant's $|_{62}$guest, see Scott, 454 Mass. at 794-795, 912 N.E.2d 1000, the injured party may recover personal injury damages through both a tort claim based on the landlord's negligence and a contract claim based on the landlord's breach of the implied warranty of habitability. If a tenant could recover personal injury damages under the implied warranty for a slip and fall on ice in a common area, we would need to consider whether the judge erred as a matter of law in concluding that the tenant's claim failed because the jury's finding of comparative negligence was equivalent to a finding of "unreasonable misuse" of the rear fire escape. However, we need not reach that question because we conclude that personal injury damages for a landlord's unreasonable failure to clear snow and ice from a common area may be recovered under our common law in a tort action based on negligence but not in a contract action based on the implied warranty of habitability.

In McAllister v. Boston Hous. Auth., 429 Mass. 300, 305-306, 708 N.E.2d 95 (1999), overruled on other grounds by Sheehan v. Weaver, 467 Mass. 734, 736, 7 N.E.3d 459 (2014), a tenant slipped and fell on ice on the exterior stairs of the landlord's premises and claimed that the landlord was liable under the implied warranty of habitability for failing to comply with State sanitary and building code provisions that require the removal of snow and ice. We declared that "the implied warranty of habitability applies to significant defects in the property itself." Id. at 305, 708 N.E.2d 95. And we concluded that "[t]he natural accumulation of snow and ice is not such a defect." Id. at 306, 708 N.E.2d 95. However, as earlier noted, under the common law at that time, the natural accumulation of snow and ice was not deemed a defect in a tort claim for negligence, even if the landlord acted unreasonably in failing to clear it. See Sullivan, 416 Mass. at 827-828, 626 N.E.2d 870 (landlord not liable where employees left ramp in icy condition after shoveling it).

[4] Now, under our common law, a landlord may be liable in negligence for failing to act reasonably in snow and ice removal, even if the accumulation of snow or ice was natural. See Papadopoulos, 457 Mass. at 383, 930 N.E.2d 142. But in abolishing the distinction between the natural and unnatural accumulation of snow and ice in tort, we did not intend also to declare that a tenant may now recover personal injury damages for a slip and fall on snow or ice under the implied warranty of

habitability. Nor would recovery of personal injury damages in these circumstances fit neatly within the implied warranty of habitability.

**[5, 6]** The warranty of habitability is an implicit provision in every residential rental contract and does not incorporate a fault element. ₆₃See Berman & Sons v. Jefferson, 379 Mass. 196, 200, 396 N.E.2d 981 (1979) ("Considerations of fault do not belong in an analysis of warranty"). The warranty of habitability is not intended to punish landlords for misbehavior but rather to ensure that tenants receive what they are paying for: a habitable place to live. Id. at 202, 396 N.E.2d 981. It recognizes that the landlord's promise "to deliver and maintain the demised premises in habitable condition" and the tenant's promise "to pay rent for such habitable premises" constitute interdependent and mutual consideration and that, consequently, "the tenant's obligation to pay rent is predicated on the landlord's obligation to deliver and maintain the premises in habitable condition." Hemingway, 363 Mass. at 198, 293 N.E.2d 831.

Strict liability for the rental of a leasehold that is not habitable, based on the interdependence of rights and responsibilities, is well-suited to the warranty's original context of rent abatement. It ensures that tenants who do not receive what they are paying for may be compensated for the reduced value of the premises during any period when it is uninhabitable. See id. at 203, 293 N.E.2d 831.

**[7]** But negligence, not strict liability, is the standard of liability we generally apply in personal injury cases. As we earlier explained, when we first awarded personal injury damages on a warranty of habitability claim, tenants had little help from negligence law to ensure that landlords made necessary repairs, and we believed that the public policy of holding landlords liable for furnishing unsafe premises justified fitting a square peg (personal injury damages) into a round hole (breach of the warranty of habitability). See Hacker, 310 Mass. at 756-757, 39 N.E.2d 644. Despite this poor fit, we have continued to hold that personal injury damages were recoverable for a breach of the warranty of habitability even after a tenant could invoke the same negligence standard as any lawful visitor. See Scott, 454 Mass. at 794-795, 912 N.E.2d 1000; Crowell, 377 Mass. at 451, 386 N.E.2d 1256. But in those cases, there was considerable evidence that the landlord also was negligent. See Scott, 454 Mass. at 796, 912 N.E.2d 1000 (jury returned verdicts in favor of plaintiff on both negligence and breach of warranty of habitability claims); Crowell, 377 Mass. at 452, 386 N.E.2d 1256 (jury could have found that landlord, in exercise of reasonable care, could have discovered and remedied building and sanitary code violations). See also Young, 380 Mass. at 164, 402 N.E.2d 1045 (jury found landlord negligent for failure to maintain premises). Perhaps for that reason, we have consistently left unanswered the question whether landlord liability for personal injury damages under the implied warranty of habitability is strict liability or ₆₄whether it is subject to a negligence standard requiring notice. See Scott, supra at 796 n.8, 912 N.E.2d 1000; Simon v. Solomon, 385 Mass. 91, 98, 431 N.E.2d 556 (1982); Young, supra at 170 n.9, 402 N.E.2d 1045; Crowell, 377 Mass. at 452, 386 N.E.2d 1256.

**[8]** We need not answer that question here.[7] Nor need we consider whether, now

---

7. We note that, in 1995, the California Supreme Court reversed its earlier decision in Becker v. IRM Corp., 38 Cal. 3d 454, 457, 465, 213 Cal.Rptr. 213, 698 P.2d 116 (1985),

that our common law requires that landlords exercise the same reasonable care towards tenants as lawful visitors to the premises, we should retreat from the path we previously have taken and allow tenants to recover for personal injuries only in tort rather than in both tort and contract.[8] It suffices to say that, where personal injury results from a slip and fall on snow or ice in a common area, recovery of damages under our common law is limited to a tort claim for negligence. Personal injury damages for such slips and falls may not be recovered on a claim in contract under the implied warranty of habitability.

[9–13] There is a second reason for affirming the judge's finding that ⌊65the landlord was not liable for breach of the implied warranty of habitability, albeit on different grounds: viewing the facts of this case in the light most favorable to the tenant, as a matter of law there was no breach of the warranty. Habitability is measured by minimum community standards, which are generally, though not exclusively, reflected in the sanitary and building codes. See Crowell, 377 Mass. at 451, 386 N.E.2d 1256. Although violations of the codes may provide compelling evidence that a dwelling is not habitable, they do not establish per se breaches of the warranty of habitability. See McAllister, 429 Mass. at 305, 708 N.E.2d 95 ("Not every breach of the State sanitary code supports a claim under the implied warranty of habitability"). The emphasis is on whether the premises are fit for human habitation, not merely on whether the landlord committed a code violation. Second, the violation must relate to the "provision, maintenance, and repair of the physical facilities" of the property. Doe v. New Bedford Hous. Auth., 417 Mass. 273, 282, 630 N.E.2d 248 (1994). "[T]he scope of the warranty of habitability includes only

---

in which it held that a landlord was strictly liable under the warranty of habitability for injuries suffered by a tenant who slipped and fell against a shower door made of glass that was not tempered. See Peterson v. Superior Court, 10 Cal. 4th 1185, 1188, 43 Cal.Rptr.2d 836, 899 P.2d 905 (1995) ("we erred in Becker in applying the doctrine of strict products liability to a residential landlord that is not a part of the manufacturing or marketing enterprise of the allegedly defective product that caused the injury"). In leaving behind the strict liability standard, the California Supreme Court noted that "nearly all states have recognized an implied warranty of habitability in residential leases," but that Louisiana was the only other State which imposed strict liability for personal injury claims. Id. at 1205, 43 Cal.Rptr.2d 836, 899 P.2d 905. At the time, Louisiana imposed strict liability upon landlords by statute. Id. In 1996, however, the Louisiana statute was amended to abandon strict liability and to adopt a negligence standard instead. See Ford v. Bienvenu, 804 So.2d 64, 66 (La. Ct. App. 4th Cir. 2001).

8.  We recognize that several of our sister States have concluded that where personal injury is concerned, tort principles provide a "more straightforward way" to delineate the rights and duties of the parties. Favreau v. Miller, 156 Vt. 222, 229, 591 A.2d 68 (1991). See Auburn v. Amoco Oil Co., 106 Ill. App. 3d 60, 64, 61 Ill.Dec. 939, 435 N.E.2d 780 (1982) ("no action for personal injuries can result from a breach of the implied warranty of habitability"); Chiu v. Portland, 788 A.2d 183, 188 n.6 (Me. 2002) ("consequential damages are an inappropriate remedy for breach of the statutory warranty of habitability"); Curry v. New York City Hous. Auth., 77 A.D.2d 534, 535, 430 N.Y.S.2d 305 (1980) (finding it "quite improbable that the [Legislature] contemplated extension of the principle of strict liability to landlords for injuries and damages traditionally the subject of tort liability"); McIntyre v. Philadelphia Hous. Auth., 816 A.2d 1204, 1212 (Pa. Commw. Ct. 2003) (permitting recovery of personal injury damages on warranty of habitability theory "would eliminate the fundamental distinctions between contract and tort and only lead to further confusion regarding the nature and role of these two theories of recovery").

**GOREHAM v. MARTINS**  Mass.  **489**
Cite as 147 N.E.3d 478 (Mass. 2020)

the physical maintenance and repair of a dwelling unit." Id. at 281, 630 N.E.2d 248. Finally, the warranty of habitability applies only to "substantial" violations or "significant defects." See McAllister, supra; Berman & Sons, 379 Mass. at 201-202, 396 N.E.2d 981.

The tenant makes no argument regarding whether the warranty of habitability applies to the driveway; he proceeds on the assumption that it does. Nor does he specify any building or sanitary code violations that impaired the habitability of his dwelling unit. We recognize that the sanitary code requires that a property owner "shall maintain all means of egress at all times in a safe, operable condition and shall keep all exterior stairways, fire escapes, egress balconies and bridges free of snow and ice." 105 Code Mass. Regs. § 410.452 (2007). But, even if we were to assume that the accumulation of ice on the driveway violated this provision of the code, we decline to extend the warranty of habitability to cover a violation of the sanitary code that does not affect the habitability of a tenant's "dwelling unit." See Doe, 417 Mass. at 281, 630 N.E.2d 248.

Given the strict liability standard, the scope of the warranty of habitability must be interpreted to encompass only those conditions that render the tenant's apartment uninhabitable. This does not mean that defects in common areas under the landlord's control can never render a dwelling uninhabitable: if, for instance, the only way to exit the building were through the driveway, and the landlord had dug a gravel pit there, making any and all access to the apartment dangerous, that would likely violate the warranty of habitability because the tenant would be unable safely to access the dwelling. However, those are not the facts in this case. The tenant's preference to use the rear fire escape when another suitable and safe exit from the building existed does not require us to conclude that the mere presence of snow and ice on a driveway in the winter in Massachusetts rendered his apartment uninhabitable. To do so would impose an unreasonable burden on landlords given the realities of a New England winter.

[14] 3. Covenant of quiet enjoyment. Under G. L. c. 186, § 14, a landlord who "directly or indirectly interferes with the quiet enjoyment of any residential premises by the occupant" is subject to liability.[9] This statutory right of quiet enjoyment protects a tenant from "serious interference" with the tenancy, meaning any "acts or omissions that impair the character and value of the leasehold." Doe, 417 Mass. at 285, 630 N.E.2d 248.

---

9. General Laws, c. 186, § 14, provides in relevant part:

 "Any lessor or landlord of any building or part thereof occupied for dwelling purposes, . . . who is required by law or by the express or implied terms of any contract or lease or tenancy at will to furnish water, hot water, heat, light, power, gas, elevator service, telephone service, janitor service or refrigeration service to any occupant of such building or part thereof, who willfully or intentionally fails to furnish such water, hot water, heat, light, power, gas, elevator service, telephone service, janitor service or refrigeration service at any time when the same is necessary to the proper or customary use of such building or part thereof, . . . or any lessor or landlord who directly or indirectly interferes with the quiet enjoyment of any residential premises by the occupant, . . . shall be punished by a fine of not less than twenty-five dollars nor more than three hundred dollars, or by imprisonment for not more than six months. Any person who commits any act in violation of this section shall also be liable for actual and consequential damages or three month's rent, whichever is greater, and the costs of the action, including a reasonable attorney's fee, all of which may be applied in setoff to or in recoupment against any claim for rent owed or owing."

**[15–19]** The statute does not require that the landlord act intentionally to interfere with a tenant's right to quiet enjoyment. Al-Ziab v. Mourgis, 424 Mass. 847, 850, 679 N.E.2d 528 (1997). "In analyzing whether there is a breach of the covenant, we examine the landlord's conduct and not his intentions." Doe, 417 Mass. at 285, 630 N.E.2d 248, citing Blackett v. Olanoff, 371 Mass. 714, 716, 358 N.E.2d 817 (1977). Rather, liability under the covenant requires only "a showing of at least negligent conduct by a landlord." Al-Ziab, supra. The key inquiry is whether the serious interference with the tenancy is a "natural and probable |₆₇consequence of what the landlord did, what he failed to do, or what he permitted to be done" (citation omitted). Doe, supra. Therefore, a landlord is liable for "actual and consequential damages" under § 14 where the landlord (1) "had notice of or reason to know" of the condition interfering with the tenant's quiet enjoyment of the premises, and (2) acted at least negligently in failing "to take appropriate corrective measures." Al-Ziab, supra at 851, 679 N.E.2d 528.

In ruling on the covenant claim, the judge stated that the jury's finding of negligence against the landlords satisfied the "fault or foreseeability" prerequisite to liability. See id. ("some degree of fault or foreseeability should be a prerequisite to liability under § 14"). He went on to state, however, that where there was no showing of reckless, willful, or intentional conduct on the part of the landlords, and where liability was based solely on negligence, comparative negligence principles applied. And because the jury found the tenant more responsible for his injuries than the landlords, the tenant was barred from recovery under the covenant. The landlords and the amici urge us to adopt this standard, and the amici argue that it would be unfair to provide for the recovery of statutory damages on a showing of negligence while denying landlords the defense of comparative negligence. The tenant argues that the jury's finding that the landlords were negligent satisfies the covenant's fault requirement; the tenant's comparative negligence is not relevant to liability.

**[20, 21]** We agree with the tenant that comparative negligence does not apply to claims brought under G. L. c. 186, § 14. A landlord who interferes with a tenant's right to quiet enjoyment is subject to both civil and criminal liability. G. L. c. 186, § 14 (landlords who violate statutory covenant of quiet enjoyment "shall be punished by a fine of not less than twenty-five dollars nor more than three hundred dollars, or by imprisonment for not more than six months" and "shall also be liable for actual and consequential damages or three month's rent, whichever is greater, and the costs of the action, including a reasonable attorney's fee"). Under a criminal statute, an injured victim's conduct is relevant only if it justifies or mitigates the defendant's conduct, such as where a victim's conduct justifies a defendant's act in self-defense. See, e.g., Commonwealth v. Kendrick, 351 Mass. 203, 210, 218 N.E.2d 408 (1966) (circumstances of homicide committed in self-defense mitigate crime from murder to manslaughter). Where, as with § 14, a statute makes negligent conduct criminal, a landlord's negligent |₆₈conduct is still criminal even if the injured victim was more negligent. See Commonwealth v. Campbell, 394 Mass. 77, 87, 474 N.E.2d 1062 (1985) ("In criminal cases, as opposed to civil negligence suits, a victim's contributory negligence, even if it constitutes a substantial part of proximate cause [but not the sole cause], does not excuse a defendant whose conduct also causes" injury). Where a landlord may be found criminally liable for negligence under § 14 regardless of the negligence of the tenant, we are not persuaded that the Legislature

intended a different standard for the landlord's civil liability. In the absence of a strong indication of such legislative intent, we will not apply the civil doctrine of comparative negligence to a statute that provides for both criminal and civil liability.

**[22–24]** However, the fact that comparative negligence is inapplicable to claims brought under the statutory covenant of quiet enjoyment does not necessarily mean that the landlords are liable in this case: the landlord's negligence is only one of the necessary prerequisites to a finding of liability. To succeed on his claim, the tenant must also demonstrate that the landlords' negligence caused "serious interference with his tenancy" by "acts or omissions that impair[ed] the character and value of the" leased premises. Doe, 417 Mass. at 285, 630 N.E.2d 248.

The "loss of use" of a common area under the control of a landlord potentially might create a serious interference with a tenancy. Id. at 286, 630 N.E.2d 248. In this case, however, no reasonable finder of fact could find that the tenant lost the use of the driveway because of the icy condition. He did not lose its use as a parking area, because he was not entitled to park a vehicle in the driveway under the lease. And even if the icy condition caused him to lose its use as a safe means of egress to the sidewalk, no reasonable finder of fact could conclude that the temporary loss of this means of egress seriously interfered with his tenancy where the premises had a main entrance that led after a few steps to the sidewalk.[10] The fact that the tenant preferred to use the rear fire escape and access the sidewalk from the driveway suffices to show that the icy driveway was a temporary inconvenience, but it does not rise to the level of a serious interference that impairs "the character and value of the" leased premises. Id. at 285, 630 N.E.2d 248. We therefore affirm $|_{69}$denial of the tenant's posttrial motion.

Conclusion. We affirm the judge's denial of the tenant's posttrial motions. Judgment may enter for the defendant on all claims.

Judgment affirmed.



485 Mass. 86
**COMMONWEALTH**

v.

**Kevin FRANCIS.**

**SJC-12683**

Supreme Judicial Court of Massachusetts, Suffolk.

Argued November 4, 2019

Decided June 24, 2020

**Background:** Following affirmance on direct appeal of defendant's conviction for first degree murder, 391 Mass. 369, 461 N.E.2d 811, and denial of postconviction relief, defendant filed a motion for new trial. The Superior Court Department, Suffolk County, Mitchell H. Kaplan, J., denied defendant's motion for new trial. Defendant filed application for leave to appeal, and a single justice of the Supreme Judicial Court remanded. The Superior Court, Kaplan, J., resolved questions of fact. A single justice of the Supreme Judi-

---

10. At trial, the tenant did not present evidence that exiting the building through the main entrance would have been equally unsafe, and the jury's finding that the tenant was comparatively negligent and that he was more responsible for the injury than the landlords indicates that they determined that the tenant could have more safely exited the building through the main entrance.